UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTHONY MILLER,

                              Plaintiff,

                                                    Case No. 23-CV-06649-FPG

v.

                                                    DECISION AND ORDER

COUNTY OF MONROE,

                              Defendant.

# INTRODUCTION

On November 9, 2023, Plaintiff Anthony Miller ("Plaintiff") brought this action pursuant to 42 U.S.C. § 1983 against Defendant County of Monroe ("Defendant" or the "County"). ECF No. 1. Plaintiff alleges that a prosecutor with the Monroe County District Attorney's Office ("MCDAO") failed to disclose exculpatory and impeachment information during Plaintiff's prosecution for criminal robbery in violation of Plaintiff's constitutional rights, pursuant to a policy or custom. *See* ECF No. 1.

Defendant has moved to dismiss Plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff has failed to articulate a claim under *Monell v. City of New York*, 436 U.S. 658 (1978). ECF No. 4. For the reasons set forth below, Defendant's motion is GRANTED.

# BACKGROUND[1]

---

[1] Courts evaluating a motion to dismiss must accept facts alleged in the complaint as true and draw all reasonable inferences from those facts in favor of the non-moving party. As such, the facts below are drawn from Plaintiff's complaint and accepted as true. This background is a summary and does not necessarily include all allegations in the complaint.

On or about October 1, 2013, a grand jury indicted Plaintiff with a charge of robbery in the first degree and other charges.  *See* ECF No. 1 at 11.  During the MCDAO's prosecution of Plaintiff, Assistant District Attorney Michael Harrigan ("Harrigan") failed to disclose discoverable exculpatory and impeachment material to defense counsel before Plaintiff's trial.  *Id*. at 11.  Specifically, Harrigan failed to disclose a September 28, 2013 police report regarding Rochester Police Department Investigator Nolan Wengert's ("Wengert") use of a "Find My iPhone" application to track a phone which belonged to Jack Moseley, the victim of the robbery for which Plaintiff was convicted.  *Id*.  After Plaintiff had already been arrested, the application had tracked the allegedly stolen iPhone to a location close to the scene of the robbery, while Plaintiff was in custody at Monroe County Jail pending the grand jury indictment.  *Id*. at 10-11.

Harrigan did not disclose this report to Plaintiff and defense counsel until "the eve of trial" on September 8, 2014.  *Id*. at 11.  As a result, the trial was adjourned for two months.  *Id*.  Because of Harrigan's delay in disclosing the "Find My iPhone" report, Plaintiff and defense counsel were unable to gather certain information from Mosely's cell phone carrier or Apple regarding the use of the "Find My iPhone" application.  *Id*.

In addition, Harrigan failed to disclose recordings of radio calls in which Officer Jason Prinzi directed Officers Daryl Hogg and Daniel Watson to respond to Millbank and Bradburn Streets, an area near the scene of robbery.  During the calls, Prinzi stated that an individual who fit the description of the suspect of the robbery was present, remarking that it "could be one of the See Set kids, as the description matches my call from earlier[.]"  *Id*. at 12.  Officers Hogg and Watson stated that they were in that area and would respond to Millbank and Bradburn Streets. *Id*. at 6-7, 12.

After the delay in Plaintiff's trial, the trial commenced on November 19, 2014, before Monroe County Supreme Court Justice Thomas E. Moran. *Id*. at 12. The radio call recordings were not disclosed before or during the trial. *Id*. The calls indicated Officer Prinzi's belief that the suspect of the robbery at the time could have been an individual other than Plaintiff; that is, a member of the See Set gang. *Id*. The calls also indicated that Prinzi directed Hogg and Watson to respond to Millbank and Bradburn Streets. Officer Hogg testified at trial, but did not disclose or testify to Prinzi's direction. *Id*. at 12-13. Wengert testified to the use of the "Find My iPhone" application and stated that phone was found in the possession of another unidentified individual after Plaintiff was in custody at Monroe County Jail pending the indictment. *Id*. at 14.

On November 21, 2014, Plaintiff was convicted of all charges, and then sentenced to ten years in prison and five years of supervised release. *Id*. In May 2020, Plaintiff appealed his conviction to the Appellate Division, Fourth Department, arguing that Harrigan engaged in summation misconduct, that the police lacked reasonable cause to stop Plaintiff or probable cause to arrest him, and that his conviction was against the weight of the evidence. *Id*.

On November 13, 2020, the Appellate Division reversed Plaintiff's conviction, and dismissed the indictment as against the weight of the evidence. *Id*. at 15. The Appellate Division also found that Hogg and Watson lacked reasonable suspicion to stop Plaintiff in the first instance, and that they racially profiled him. *Id*. Plaintiff was released from custody on November 17, 2020. *Id*. at 16.

Plaintiff alleges that "Harrigan's failure or refusal to disclose material exculpatory and impeachment evidence in Plaintiff's case, including the Find My iPhone report and the recording of the police radio communications, and Harrigan's presentation of false and misleading evidence during Plaintiff's trial, was a result of the unconstitutional polices, practices, or customs of the

3

County and MCDAO at the time." *Id*. at 16.  Plaintiff asserts that the MCDAO, since 1985, has among other things, "directed prosecutors to shirk, avoid, or flagrantly violate their *Brady* obligations." *Id*. at 17.  He also claims that the MCDAO has a "*de facto* policy" of ignoring and suppressing, rather than disclosing, *Brady* material, and has failed to supervise, train, and discipline prosecutors for such misconduct.  *Id*.  Plaintiff has provided a list of twenty-seven cases in which prosecutorial misconduct at the MCDAO was found by the Appellate Division.  *Id*. at 22-26.

## LEGAL STANDARD

To survive a Rule 12(b)(6) challenge, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  (internal quotation marks omitted).  A district court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party.  *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).  In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

When deciding a motion under Rule 12(b)(6), a court ordinarily may not rely on matters outside the pleadings.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  For

the purposes of this rule, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)); *see also* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

## DISCUSSION

Defendant has moved to dismiss Plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 4. For the reasons explained below, Defendant's motion to dismiss is GRANTED.

### I.      *Monell* Claim

Plaintiff's *Monell* claim rests on the following allegations. First, Plaintiff alleges that Defendant's policy of permitting *Brady* violations caused Harrigan to "fail[] to disclose critical exculpatory and impeachment evidence to Plaintiff before, during, or after his trial," in violation of *Brady* and Plaintiff's right to due process, a fair trial, and to be free from prosecution absent probable cause. *Id*. at 31-32. Specifically, this failure was "caused by the MCDAO's […] policy of failing or refusing to seek out, collect, or track any exculpatory or impeachment information not affirmatively provided to prosecutors, or, alternatively, of suppressing material exculpatory and impeachment evidence in their possession and control." *Id*. at 32. "Harrigan's unconstitutional acts and omissions in Plaintiff's case were undertaken and carried out pursuant to […] unconstitutional policies, practices, or customs of the County and MCDAO which were in existence at the time of the conduct alleged herein, and with the full knowledge, consent, and under the supervisory authority of the MCDAO." *Id*. at 22.

Second, and relatedly, Plaintiff contends that Defendant "demonstrated deliberate indifference to Plaintiff's constitutional rights by failing to establish policies and procedures that adequately trained, monitored, supervised, or disciplined the employees of MCDAO regarding the constitutional duty to affirmatively gather and disclose exculpatory and impeachment evidence to the defense, despite the obviousness that such training, monitoring, or supervision was required in order to prevent constitutional violations, and their awareness of prior incidents in which employees of the MCDAO had failed to comply with the obligations of *Brady*." *Id*. at 32.  The "MCDAO, as an agency of [Defendant], [] has a policy, practice, and custom of failing or refusing to internally investigate, reprimand, sanction, or discipline prosecutors for misconduct." *Id*. at 22.

Defendant contends, *inter alia*, that Plaintiff has failed to plausibly allege that (i) Harrigan's misconduct in Plaintiff's case was caused by a custom or policy of Defendant, or that (ii) Defendant failed to train its employees in manner which constitutes deliberate indifference to Plaintiff's civil and constitutional rights.  *See* ECF No. 4 at 4-12.

For the reasons below, the Court agrees with Defendant.  Plaintiff has failed to plausibly allege (i) the existence of a custom or policy which caused the alleged constitutional violations in Plaintiff's case, and (ii) that Defendant failed to train, supervise, or discipline its employees in manner sufficient to give rise to municipal liability under *Monell*.[2]

"A *Monell* claim—arising from the Supreme Court case of *Monell v. Department of Social Services*, 436 U.S. 658 (1978)—is a way to hold a municipality liable under Section 1983 for the conduct of its employees."  *Pugh v. City of New York*, No. 01-CV-0129, 2002 WL 398804(ILG), at *2 (E.D.N.Y. Jan. 15, 2002).  A municipality may be liable under § 1983 when, by

---

[2] For the purposes of this Decision and Order, the Court assumes, without deciding, that Plaintiff has plausibly alleged that the prosecutor's misconduct during his criminal robbery prosecution included a *Brady* violation.  *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (underlying constitutional violation is a prerequisite to *Monell* liability).

implementation of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipality's] officers" or through practices that are so "permanent and well settled" as to constitute governmental "custom," it deprives the plaintiff of a constitutional right. *Monell*, 436 U.S. at 690.  A municipality may also be liable "under the so-called 'failure to train' theory … where the failure to train amounts to deliberate indifference to the rights of persons with whom the [agents of the municipality] come into contact." *Jenkins*, 478 F.3d at 94 (*quoting City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *Deats v. Monroe Cnty*., No. 10-CV-6473-FPG, 2014 WL 6769756, at *6 (W.D.N.Y. Dec. 1, 2014)).  "Where a district attorney acts as the manager of the district attorney's office, the district attorney acts as a county policymaker." *Walker v. City of New York*, 974 F.2d 293, 301 (2d Cir. 1992) (district attorney's office not immune from municipal liability under *Monell* for managerial functions, such as a "decision not to supervise or train ADAs on *Brady*" issues).

A plaintiff can plead a "policy" or "custom" by alleging one of the following:

(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Westchester County*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (quotations omitted)*; see Iacovangelo v. Corr. Med. Care, Inc*., 624 F. App'x 10, 13 (2d Cir. 2015) (summary order); *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012).  In addition, to prevail on a *Monell* claim, a plaintiff must also show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see City*

*of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("Governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

### A. Custom or Policy

Plaintiff first alleges that Defendant has a *de facto* custom or policy of suppressing *Brady* material and permitting *Brady* violations.  ECF No. 1 at 17, 23, 28, 32.  Defendant argues that Plaintiff has not plausibly alleged that a policy of suppressing *Brady* material was sufficiently "widespread" within the MCDAO, such that Defendant may be liable under *Monell*.  ECF No. 4 at 5.  For the reasons below, the Court agrees with Defendant.

It is well settled that a policy or custom can be found in "an act performed pursuant to a custom that has not been formally approved by an appropriate decisionmaker … [but] is so widespread as to have the force of law."  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *see Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) ("persistent and widespread" practices of city officials may constitute a municipal custom).  A practice is "widespread" when it is "common or prevalent throughout the [entity]."  *Gleeson v. County of Nassau*, No. 15-CV-6487 (AMD) (RL), 2019 WL 4754326, at *16 (E.D.N.Y. Sept. 30, 2019).

To show a policy or custom through a "widespread practice," a plaintiff must attribute a subordinate's conduct to the actions or omissions of higher-ranking officials with policymaking authority.  *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (citations omitted).  To do so, a plaintiff may show that (i) a "policymaker ordered or ratified the subordinate['s] actions, or (ii) "the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions."  *Id*. at 126.  A plaintiff may also plead the existence of *de facto* customs or policies "by citing [] complaints in

other cases that contain similar allegations." *Gaston v. Ruiz*, No. 17-CV-1252, 2018 WL 3336448, at *6 (E.D.N.Y. July 6, 2018).  Such complaints should involve factually similar misconduct, be contemporaneous to the misconduct at issue in the plaintiff's case, and result in an adjudication of liability.  *See, e.g., Isaac v. City of New York,* No. 16-CV-4729 (KAM), 2018 WL 5020173, at *17 (E.D.N.Y. Aug. 6, 2018) (finding that other court cases could not establish a *de facto* policy or custom because they involved dissimilar misconduct, were resolved by settlement, or the city prevailed); *Calderon v. City of New York*, 138 F. Supp. 3d 593, 613 (S.D.N.Y. 2015) ("None of the [16] lawsuits cited resulted in an adjudication or admission of liability and the number of suits does not suggest a pervasive illegal practice."); *Buari v. City of New York*, 530 F. Supp. 3d 356, 404 (S.D.N.Y. 2021).

Here, Plaintiff has failed to plausibly allege that a policy or custom was created by a "persistent and widespread practice" of prosecutorial misconduct at the MCDAO.  *See Buari*, 530 F. Supp. at 404.  First, Plaintiff has presented no plausible allegations that the District Attorney "ordered or ratified" Harrigan's actions.  *Amnesty America*, 361 F.3d at 113, 126.  Second, Plaintiff has presented no plausible allegations that the District Attorney was "aware" of Harrigan's actions during Plaintiff's criminal robbery prosecution, nor that the District Attorney "consciously chose to ignore them[,]" at the time of their commission.  *Id*.  Accordingly, Plaintiff has failed to plausibly allege that the prosecutorial misconduct committed by Harrigan in Plaintiff's case may be attributable to any act or omission of the District Attorney.

Likewise, Plaintiff has failed to plausibly allege the existence of a "widespread practice" of prosecutorial misconduct by citing "complaints in other cases that contain similar allegations." *Gaston*, 2018 WL 3336448, at *6.  In his complaint, Plaintiff has identified twenty-seven cases involving prosecutorial misconduct, which span over three decades, from 1980 until 2016.  *See*

ECF No. 1 at 24-27.[3]  Only seven out of the twenty-seven cases Plaintiff has gathered involved *Brady* violations, and in one, the *Brady* violation did not result in a reversal of the conviction.

Even after all reasonable inferences are drawn in Plaintiff's favor, such a low number of instances of misconduct, over the course of three decades, does not plausibly allege that a practice of permitting *Brady* violations was "so widespread as to have the force of law*," Bd. of Cnty. Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997) (citations omitted), or "so manifest as to imply the constructive acquiescence of senior policy-making officials."  *Sorlucco v. New York City Police Dept.*, 971 F.2d 864, 871 (2d Cir. 1992) (citations omitted); *see, e.g., Buari*, 530 F. Supp. 3d at 406 (plaintiff's twenty-three cited cases of misconduct occurring over a

---

[3] *People v. Porter*, 136 A.D.3d 1344 (4th Dept 2016) (prosecutor elicited false and misleading testimony and committed summation misconduct which denied the defendant a fair trial); *People v. Wright*, 25 N.Y.3d 769 (2015) (summation misconduct); *People v. Jones*, 134 A.D.3d 1588 (4th Dept 2015) ("pervasive" and "egregious" summation misconduct); *People v. Gibson*, 134 A.D.3d 1512 (4th Dept 2015) (admonished for summation misconduct in this and other cases); *People v. Griffin*, 125 A.D.3d 1509, 1510 (4th Dept 2015) (summation misconduct and "[p]erhaps most egregiously in this one-witness case where credibility was paramount, the prosecutor repeatedly and improperly vouched for the veracity of the complainant"); *People v. Jurs*, 51 Misc. 3d 653 (County Ct. Monroe Co. 2015) (summation misconduct); *People v. Carver*, 114 A.D.3d 1199 (4th Dept 2014) (belated disclosure of 911 call that identified another individual as the shooter, not the defendant, was a Brady violation); *People v. Collier*, 114 A.D.3d 1136 (4th Dept 2014) (prosecutor elicited prejudicial and misleading testimony and engaged in summation misconduct that denied the defendant a fair trial); *People v. Bernard*, 115 A.D.3d 1214 (4th Dept 2014) (MCDAO admonished for late Brady disclosure); *People v. Handy*, 20 N.Y.3d 663 (2013) (ADA's failure to preserve video of incident found to be a Brady violation); *People v. Gayden*, 111 A.D.3d 1388, 1389-90 (4th Dept. 2013) (failure to disclose the status of an essential prosecution witness as a paid informant constituted a *Brady* violation); *People v. Bradley*, 20 N.Y.3d 128 (2012) (presentation of prejudicial and misleading evidence denied defendant a fair trial); *People v. Fisher*, 18 N.Y.3d 964 (2012) (summation misconduct denied defendant a fair trial); *People v. Santiago*, 101 A.D.3d 1715 (4th Dept 2012) (admonished prosecutor for summation misconduct); *People v. Zacher*, 97 A.D.3d 1101 (4th Dept 2012) (holding that prosecutor's misconduct in characterizing the defendant's silence as evidence of his consciousness of guilt was harmless); *People v. Presha*, 83 A.D.3d 1406 (4th Dept 2011) (improper summation and prejudicial remarks by the prosecutor denied the defendant a fair trial); *People v. Stubbs*, 78 A.D.3d 1665 (4th Dept 2010) (the People's introduction of evidence of prior crimes to establish the defendant's identity was improper and denied defendant a fair trial); *People v. Bell*, 66 A.D.3d 1478 (4th Dept 2009) (error in allowing the prosecutor to vouch for witnesses' credibility was harmless); *People v. Davis*, 52 A.D.3d 1205 (4th Dept 2008) (late disclosure of key evidence denied the defendant a fair trial); *People v. Harris*, 35 A.D.3d 1197 (4th Dept 2006) (*Brady* violation denied the defendant a fair trial); *People v. Castro*, 784 N.Y.S.2d 466 (4th Dept 2004) (admonishing prosecutor for serious misconduct during summation); *People v. Valentin*, 1 A.D.3d 982, 982-83 (4th Dept 2003) (*Brady* violation denied the defendant a fair trial); *People v. Hammock*, 182 A.D.2d 1114 (4th Dept 1992) (deliberate prosecutorial misconduct in presenting false and misleading evidence, in flagrant disobedience of the trial court's prior ruling, denied the defendant a fair trial); *People v. Burke*, 566 N.Y.S.2d 169 (4th Dept 1991) (summation misconduct and the prosecutor's "pervasive pattern of misconduct" throughout the trial deprived defendant of fair trial); *People v. Grice*, 100 A.D.2d 419 (4th Dept 1984) (trial permeated by prosecutorial misconduct); *People v. Mott*, 94 A.D.2d 415 (4th Dept 1983) (deliberate and pervasive pattern of prosecutorial misconduct deprived the defendant of fair trial); *People v. Ausserau*, 77 A.D.2d 152, 154-55 (4th Dept 1980) (*Brady* violation).

twenty-year period, was insufficient to establish that improper practice was so widespread as to have the force of law) (collecting cases).

In addition, because the cases provided span a period of three decades, the Court cannot conclude that the prosecutorial misconduct in those cases, let alone the seven involving *Brady* violations, was "contemporaneous to the misconduct at issue in [Plaintiff's] case." *Isaac*, 2018 WL 5020173, at *17. Likewise, a review of those cases shows that the violations which occurred in them are not "factually similar" to Harrigan's alleged *Brady* violations, such that the Court may reasonably infer that a custom or policy of permitting *Brady* violations existed at the MCDAO. *Id.* at *17. A varied range of prosecutorial misconduct is present in each case, and the seven specific *Brady* violations that are enumerated are not sufficiently "factually similar" to Harrigan's misconduct with respect to the disclosure of either the radio call recordings or the "Find My iPhone" application in Plaintiff's case. *Id.*

In addition to the above-referenced cases, however, Plaintiff argues that "additional allegations" regarding District Attorney Sandra Doorley ("Doorley"), specifically, establish that the County had a *de facto* policy of suppressing *Brady* material at the time of his case. ECF No. 8 at 19-22. Plaintiff alleges that Doorley publicly "acknowledge[ed] the existence of MCDAO's unconstitutional policies, practices, and customs of failing to seek out and/or suppressing exculpatory and impeachment Brady evidence," in September 2021, seven years after Plaintiff's conviction. *Id.* (citing ECF No. 1 at 19-22). Doorley's comments in September 2021, which were made in regard to the MCDAO's consent to vacating the convictions of two individuals because of *Brady* violations arising out of perjury, are not sufficient to establish that a municipal policy or custom of permitting *Brady* violations existed at the MCDAO. ECF No. 8 at 20-21. These allegations, which are detailed further in Plaintiff's complaint, are not sufficient to plausibly allege

that such a policy or custom was "so persistent and widespread as to have the force of law" at the time of Plaintiff's prosecution. *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023). And, even if they were sufficient, Plaintiff has failed to plausibly allege "a direct causal link between [such] a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385. Accordingly, Plaintiff's *Monell* claim, to the extent it is premised on a "widespread practice" theory, is dismissed.

### B. Deliberate Indifference

Plaintiff relatedly contends that Defendant demonstrated "deliberate indifference" to a risk of a constitutional deprivation by failing to train and supervise prosecutors with respect to their handling of *Brady* material, and failing to discipline prosecutors for prosecutorial misconduct. ECF No. 1 at 32-33. Defendant argues that Plaintiff has failed to plausibly allege that the MCDAO demonstrated deliberate indifference to Plaintiff's constitutional rights in these ways. ECF No. 4 at 4-12. For the reasons set forth below, Plaintiff's *Monell* claim, to the extent it is premised on a "deliberate indifference" theory, does not survive dismissal.

Municipal liability can be based on a showing of "deliberate indifference" to a recurring situation likely to result in a constitutional violation. The municipality's need to act must be "so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992) (citing *Canton*, 489 U.S. at 390).

Three requirements must be met before a municipality's failure to train or supervise constitutes a deliberate indifference to the constitutional rights of citizens. *See Walker v. City of N.Y.*, 974 F.2d 293, 297 (2d Cir. 1992); *Vasconcelloes v. City of N.Y.*, 12-CV-8445, 2016 WL 403474, at *3 (S.D.N.Y. Jan. 28, 2016). First, Plaintiff must show that a municipal policymaker

knows to a moral certainty that municipal employees will confront a given situation.  *See Walker*, 974 F.2d at 297; *Vasconcelloes*, 2016 WL 403474, at *3.  Second, Plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. *See Walker*, 974 F.2d at 293; *Vasconcelloes*, 2016 WL 403474, at *3.  Third, Plaintiff must show that the wrong choice by the municipal employee will frequently cause the deprivation of a citizen's constitutional rights.  *See Walker*, 974 F.2d at 298; *Vasconcelloes*, 2016 WL 403474, at *3; *Treadwell v. Cnty. of Putnam*, No. 14-CV-10137, 2016 WL 1268279, at *3 (S.D.N.Y. Mar. 30, 2016).  Two theories of recovery appear to be available to Plaintiff if these requirements are met: (i) a failure to supervise or discipline and (ii) a failure to train.  They are similar, but distinct, theories.  The Court addresses the three requirements under *Walker*, before addressing each theory, because both appear to be advanced by Plaintiff in his complaint.  *See* ECF No. 1 at 32-33.

First, Plaintiff has alleged that the DA's Office "plainly knew, to a moral certainty, that ADAs would make probable cause assessments, offer testimonial evidence in court, confront false or misleading testimony, and acquire *Brady* material 'because these are basic facets of an ADA's job.'" *Buari*, 530 F. Supp. 3d at 406 (quoting *Bertuglia v. City of New York*, 839 F. Supp. 2d, 703 738 (S.D.N.Y. 2012) (citing *Walker*, 974 F.2d at 300)); *see Owens v. Cnty. of Monroe*, No. 21-CV-6445-FPG, 2021 WL 6113950, at *6 (W.D.N.Y. Dec. 27, 2021).

Second, Plaintiff has plausibly alleged that the "situation" in his case presented difficult choices "of the sort that training or supervision will make less difficult." *See Walker*, 974 F.2d at 293; *Vasconcelloes*, 2016 WL 403474, at *3.  While the Court recognizes that certain types of prosecutorial misconduct are "so obvious to require no training[,]" such as suborning perjury or

fabricating evidence, the duty to avoid *Brady* violations is not "so obvious or easy to [observe] as to require, as a matter of law, no training or supervision." *Walker*, 974 F. 2d at 300.

Third, Plaintiff has plausibly alleged that the "wrong choice by the municipal employee will frequently cause the deprivation of a citizen's constitutional rights." *Id*. at 298.  A failure to disclose *Brady* material, as has been alleged, would frequently cause constitutional violations. *See Buari*, 530 F. Supp. at 406; *Walker*, 974 F.2d at 300 ("[W]ithholding *Brady* material will virtually always lead to a substantial violation of constitutional rights."); *Bertuglia*, 839 F. Supp. 2d at 739 ("[W]here an assistant district attorney commits misconduct … or violates their obligations under *Brady*, those actions will frequently result in the violation of citizens' constitutional rights.")); *Owens*, 2021 WL 6113950, at *6.

With these three requirements adequately alleged, the Court turns to whether Plaintiff has plausibly alleged Defendant's "deliberate indifference" based on a (i) failure to supervise or discipline, or (ii) failure to train theory.

To establish *Monell* liability for a failure to supervise or discipline, a plaintiff must plead that (1) there was a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2) the municipality consistently failed to investigate those allegations. *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *21-22 (S.D.N.Y. Mar. 26, 2015).  A need for greater supervision or discipline "may be demonstrated through proof of repeated complaints of civil rights violations" that are not followed by a "meaningful attempt . . . to investigate or to forestall further incidents." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995); *Treadwell v. Cnty. of Putnam*, No. 14-CV-10137 (KMK), 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30, 2016).

Here, Plaintiff has failed to plausibly allege a "pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity." *Tieman*, 2015 WL 1379652, at *21-22. Because Plaintiff fails to plausibly allege such a pattern, the Court need not determine whether Defendant "consistently failed to investigate" one. *Id*. As explained in Section I.A. *supra*, the cases Plaintiff has gathered are not sufficient to plausibly allege that the MCDAO has experienced a "pattern" of constitutional violations, over a period of approximately thirty years, nor that the constitutional violations are sufficiently similar to that which is alleged to have occurred in Plaintiff's case. Plaintiff's "deliberate indifference" claim, premised on failure to supervise or discipline, is without merit.

To establish *Monell* liability for a failure to train, a municipality may be liable "when city policymakers are on actual or constructive notice that a particular omission in their training program causes [] employees to violate citizens' constitutional rights … [but] the policymakers choose to retain that program." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted). A failure to train constitutes a policy or custom under § 1983 only where "in light of the duties assigned to […] employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

A plaintiff must "identify a specific deficiency in [a defendant's] training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Alwan v. City of New York*, 311 F. Supp. 3d 570, 579 (E.D.N.Y. 2018) (quoting *Wray v. City of New York*, 490 F.3d 189, 196 (2d Cir. 2007)). The Second Circuit has suggested that a plaintiff "need only plead [a municipality's] failure to train caused the

15

constitutional violation" because "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage." *Amnesty America*, 361 F.3d at 130 n.10. Still, courts generally require that a plaintiff "provide more than a simple recitation of their theory of liability, even if that theory is based on a failure to train.'" *Tieman*, 2015 WL 1379652, at *22 (collecting cases); *see Collins*, 923 F. Supp. 2d at 478 (noting that under *Iqbal*, a plaintiff "must allege, not only a viable [failure to train] theory, but facts that render the theory plausible"). Accordingly, a plaintiff must "allege facts that support an inference that the municipality failed to train its [employees], that it did so with deliberate indifference, and that the failure to train caused his constitutional injuries." *Tieman*, 2015 WL 1379652, at *22 (collecting cases).

Here, Plaintiff does not plausibly allege that a particular omission in Defendant's training "cause[d] [] employees to violate citizens' constitutional rights," nor that such an omission put Defendant on notice of an "obvious" need for more training, which was "so likely" to result in constitutional violations like those which are alleged to have occurred in Plaintiff's case. *Connick*, 563 U.S. at 61; *City of Canton*, 489 U.S. at 390. As stated, the cases Plaintiff has gathered, which span over three decades and involve a range of discrete instances of prosecutorial misconduct, are insufficient to indicate that an "obvious" omission in Defendant's training existed, let alone that such an omission "actually caused" a constitutional deprivation in Plaintiff's case. *City of Canton*, 489 U.S. at 390. While Plaintiff has alleged with some specificity a "deficiency" in Defendant's training, Plaintiff does not plausibly allege that this alleged deficiency "actually caused a constitutional deprivation" in his criminal robbery prosecution. *Alwan*, 311 F. Supp. 3d at 579.

Specifically, Plaintiff alleges that, since 1998, the MCDAO has failed to investigate instances of alleged prosecutorial misconduct. *See* ECF No. 1 at 23-29. In support of this

assertion, Plaintiff alleges that the County stated, in response to a Freedom of Information request, that it does not possess "records of any discipline imposed on attorneys employed by [the] MCDAO from January 1, 1998 until 2021," nor records of discipline against attorneys which may have resulted from overturned convictions. *Id*. at 23.

Even accepting these allegations as true, and drawing all reasonable inferences in Plaintiff's favor, Defendant's alleged failure to maintain disciplinary records for instances of prosecutorial misconduct does not constitute a "deficiency" which is "closely related" to the ultimate injury in Plaintiff's case, such that it may have "actually caused the constitutional deprivation." *Alwan*, 311 F. Supp. 3d at 579. Absent a causal link, the Court is not convinced, as it must be, that Defendant's training was "so deficient as to reflect a policy of deliberate indifference to the civil rights of the citizenry." *Vann v. City of New York*, 72 F.3d 1040, 1050 (2d Cir. 1995) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)).[4] Accordingly, to the extent Plaintiff's deliberate indifference claim is premised on a failure to train, this claim is dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Clerk of Court shall enter judgment for Defendant and close this case.

SO ORDERED.

Dated: May 31, 2024
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

---

[4] For these reasons, the Court departs from the reasoning articulated in Section I.B. of *Owens v. Cnty. of Monroe*, No. 21-CV-6445-FPG, 2021 WL 6113950, at *6 (W.D.N.Y. Dec. 27, 2021).